William A. Daniels, Esq. (172042)
**DANIELS LAW**
15021 Ventura Blvd., #883
Sherman Oaks, CA 91403
T: (818) 907-8073
F: (818) 332-1284
Bill@DanielsLaw.com

Attorneys for Plaintiff,
Emergent Medical Associates

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMERGENT MEDICAL ASSOCIATES,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>ALLIED WORLD ASSURANCE COMPANY (US), INC.,<br><br>　　　　　　Defendant. | CASE NO. 2:16-CV-00069<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Breach of Contract<br>2. Breach of the Implied Covenant of Good Faith and Fair Dealing<br><br>**JURY TRIAL DEMAND** |

Plaintiff, EMERGENT MEDICAL ASSOCIATES, alleges:

### PARTIES

1.　At all times herein, plaintiff, EMERGENT MEDICAL ASSOCIATES ("Plaintiff") is a general partnership formed under the laws of the State of California with its headquarters in Manhattan Beach, California.

2.　At all times alleged in this pleading, defendant ALLIED WORLD ASSURANCE COMPANY (US), INC., ("Allied World") was and is a

casualty insurer authorized and qualified to conduct insurance business within the State of California.

## GENERAL ALLEGATIONS

3. Plaintiff is a medical partnership that provides emergency room services in Southern California.

4. Allied World is the insurance carrier that first issued a "Forcefield" Healthcare Organizations Directors and Officers Liability Policy, Policy No. 0303-9294 to Pacific Healthworks, LLC and Plaintiff on May 1, 2008 ("Policy"). Pacific Healthworks, LLC is the named insured on the Policy; Plaintiff is an additional insured. A true copy of the Policy's 2013-2014 renewal form ("2013-2014 Renewal Policy") is attached as Exhibit "1."

5. The Policy provides Plaintiff with, among other things, insurance protection for liability arising out of a civil judicial proceeding, including protection against loss due to the risk of lawsuits for alleged wrongful acts. The Policy includes coverage for defense costs incurred in connection with a civil lawsuit.

6. Plaintiff staffs the Emergency Department for many Prime Healthcare hospitals. Prime Healthcare is an award winning hospital management company that operates 38 acute care hospitals in eleven states.

7. In 2009, Prime Healthcare files suit against Kaiser Foundation Health Plan, Inc. and various associated entities ("Kaiser") in the Los Angeles Superior Court, alleging underpayment for services rendered. Ultimately, seven Prime Healthcare suits are joined into a single Judicial Council Coordinated Proceeding, Case No. JCCP4580 ("Prime Litigation").

8. The Prime Litigation involves claims totaling tens of millions of dollars. Because Prime employs many health care subcontractors who might

potentially become embroiled in the Prime Litigation, health care industry liability carriers such as Allied World are aware of and monitor the proceedings.

9. In 2011, Kaiser files a cross-complaint against Prime Healthcare ("Kaiser Cross-Complaint"), alleging among other things, unfair business practices under California Business and Professions Code section 17200, et seq.

10. As discovery progresses, Kaiser sends a third-party subpoena to EMA. Because the Prime/Kaiser litigation has received significant press coverage and is well known in the industry, Allied World knows or should know that Plaintiff's close association with Prime Healthcare makes it a likely target in the case.

11. In early 2013, Kaiser decides to put pressure on the Plaintiff by adding them as a cross-defendant. Kaiser's strategy involves a simple "divide and conquer" approach. Kaiser calculates that Plaintiff cannot withstand the high cost of defending a complex matter. Kaiser believes that even though it has no viable claims against the Plaintiff, once faced with the prospect of defense costs in the hundreds of thousands of dollars, Plaintiff will have no choice but to sue for peace, thus depriving Prime Healthcare of a valuable ally. Again, because of the high profile nature of the Prime Healthcare/Kaiser litigation in the health care industry, Allied World knows or should know that Kaiser will more probably than not add Plaintiff as a cross-defendant.

12. On April 9, 2013, Kaiser amends its Second Amended Cross-Complaint to add Plaintiff as a cross-defendant, alleging unfair business practices and seeking injunctive relief. Kaiser serves Prime Healthcare that same day and then serves Plaintiff the next.

13. Plaintiff correctly recognizes Kaiser's claims are not viable. However, despite Plaintiff's efforts to have the claims dismissed, Kaiser persists in prosecuting its cross-complaint.

14. On November 21, 2013, Plaintiff tenders a claim under the Policy, seeking a defense from Allied World.

15. The tender is made through Plaintiff's broker. It consists of a short email, with two attachments: 1) The operative December 2, 2011 cross-complaint in the Kaiser Litigation and; 2) The "Doe" Amendment adding Plaintiff as a cross-defendant, with proof of service attached. A true copy is attached as Exhibit "2."

16. The proof of service attached to the "Doe" Amendment states attorneys for the plaintiff and cross-defendants were served April 9, 2013.

17. The email states: "We have been asked to submit the attached Complaints for review of coverage and discussion. Please advise us immediately as to who will be assigned to this so we can schedule a brief call."

18. Allied World commences a coverage investigation. Plaintiff and their brokers cooperate fully with the investigation, providing Allied World with additional information as requested.

19. In a letter dated January 7, 2014, Allied World grants coverage for Plaintiff's Kaiser Litigation defense. A true copy of the letter is attached as Exhibit "3."

20. The January 7 letter is written by Allied World attorney, Alona R. Foy, Esq., who writes:

"As the Complaint alleges a **Claim** for a **Wrongful Act** made against **Insureds** during the **Policy Period**, the conditions precedent to the Insuring Agreements appear to be satisfied. Accordingly, the Policy

provides for a Maximum Limit of Liability for all **Claims** of $1,000,000 subject to a $25,000 retention, which is applicable to the Loss, including **Defense Costs**, for each **Claim**. [Emphasis in original.]"

21. The letter grants coverage under the May 1, 2013 to May 1, 2014 renewal policy ("2013-2014 Renewal Policy"). The letter appoints counsel to defend Plaintiff and disclaims any liability for defense costs incurred prior to the November 21, 2013 tender date.

22. Plaintiff successfully defends itself and is dismissed from the Kaiser action. Plaintiff incurs in excess of $800,000 in attorney fees and costs in mounting its successful defense.

23. Plaintiff continually presses Allied World to pay the defense costs under the coverage terms confirmed in the January 7, 2014 letter.

24. Allied World provides Plaintiff with some defense cost reimbursement, but leaves the bulk unpaid. Allied World also participates in conference calls and directs certain litigation strategies, which significantly affect Plaintiff's defense costs. When Plaintiff demands reimbursement under the Policy, Allied World puts Plaintiff off, but does not explain the delay.

25. Eleven months after Allied World grants coverage under the 2013-2014 Renewal Policy, Plaintiff's defense cost claim exceeds $800,000. Upon discovering that Plaintiff's defense costs exceed $800,000, Allied World decides to deny coverage.

26. In a November 20, 2014 letter written by Allied World attorney, Taylor L. Norton, J.D., Allied World states it is denying coverage because: "Allied World has since discovered and confirmed with you that service of Kaiser's amendment to the Cross-Complaint, which named [Plaintiff] as a defendant, was in fact made before the inception of the [2013-2014 Renewal] Policy."

27. Allied World's denial misstates the record. The denial is not based on new information. Allied World knew or should have known when Plaintiff was served when it confirmed coverage on January 7, 2014.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

28. Plaintiff repeats and realleges paragraphs 1 through 27 of this Complaint, as if set forth and full herein and incorporate said allegations by reference.

29. Pacific Health Works, LLC ("Pacific") first purchases Allied World Directors and Officers Policy No. 0303-9294, May 1, 2008. The Policy remains in force continually from its inception through all relevant periods.

30. Policy No. 0303-9294 renews in 2012 for the period May 1, 2012 through May 1, 2013 ("2012-2013 Renewal Policy"). Policy No. 0303-924 again renews in 2013 for the period May 1, 2013 through May 1, 2014 ("2013-2014 Renewal Policy").

31. On April 9, 2013, Kaiser adds Plaintiff as a cross-defendant in the Kaiser action and immediately serves Plaintiff with the summons and cross-complaint.

32. On November 21, 2003, Plaintiff tenders its claim for a defense to Allied World.

33. In tendering its claim for a defense, Plaintiff sends Allied World a copy of the operative Second Amended Cross-Complaint, as well as the Doe Amendment with proof of service stating that counsel for plaintiffs and cross-defendants were served on April 9, 2013.

34. On January 7, 2014, Allied World sends Plaintiff a letter accepting coverage under the 2013-2014 Renewal Policy. (Exhibit "3.") Allied World writes:

"As the Complaint alleges a Claim for a Wrongful Act made against Insureds during the Policy Period, the conditions precedent to the Insuring Agreements appear to be satisfied. Accordingly, the Policy provides for a Maximum Limit of Liability for all Claims of $1,000,000 subject to a $25,000 retention, which is applicable to the Loss, including Defense Costs, for each Claim.

35. As part of its tender, Plaintiff requests specified counsel be appointed to defend the cross-complaint. Allied World takes control of the defense by approving Plaintiff's choice of counsel (*Tulare Co. Power Co. v. Pacific Sur. Co.*, 43 Cal. App. 315 (1919)), writing:

"Despite the fact that Allied World has the right to appoint defense counsel, you have requested that we appoint Andrew Selesnick of Michelman & Robinson, LLP to defend EMA's interests in this matter. We agree to Mr. Selesnick's representation of EMA in this matter for reasonable and necessary Defense Costs.

36. In its January 7, 2014 letter, Allied World agrees to pay Defense Costs incurred by Plaintiff on or after the November 21, 2013 tender date under the 2013-2014 Renewal Policy. This is an express grant of coverage by Allied World.

37. Allied World's coverage grant is conduct constituting either the intentional relinquishment of the right to enforce terms contained within the 2013-2014 Renewal Policy that might otherwise preclude coverage or, in the alternative, an act inconsistent with Allied World's right to

enforce limits imposed by either the 2012-2013 Renewal Policy or the 2013-2014 Renewal Policy on when a claim may be presented.

38. Under California law, any alleged delay in the presentation to a carrier of notice or proof of loss is waived if the carrier omits to make an objection promptly and specifically upon that ground. (Cal. Ins. Code § 554.)

39. California law also imposes a duty on Allied World to conduct a fair and thorough investigation before extending coverage. "The duty to investigate possible bases for an insured's claim includes the duty to investigate grounds for denying the claim." (*Estate of Parker*, 317 F. Supp. 2d 1167, 1172 (C.D.Cal. 2004).

40. Plaintiff defends the Kaiser action, relying on Allied World's coverage confirmation and Allied World's statement that it agrees that fees and costs incurred by Plaintiff's attorneys are reasonable and necessary Defense Costs under the 2013-2014 Renewal Policy.

41. Allied World pays Plaintiff partial benefits under the 2013-2014 Renewal Policy.

42. Ultimately, Plaintiff incurs more than $800,000 in attorney fees qualifying as Defense Costs under the 2013-2014 Renewal Policy.

43. Allied World's coverage grant under these circumstances constitutes (1) a waiver of any policy condition precedent requiring that a covered "Claim" arise within the policy period with written notice provided "as soon as practicable." (*DuBeck v. California Physician's Service*, 234 Cal. App. 4th 1254, 1267-1268 (2015).)

44. On January 7, 2014, Allied World sends Plaintiff a letter stating that it is denying coverage based on Plaintiff being served with the cross-complaint in April 2013.

45. Allied World bases its denial on a policy provision that requires a claim for defense arise within the policy period.

46. The coverage denial is a breach of the Policy given Allied World's waiver.

47. Allied World is also estopped from denying coverage for Plaintiff's claim.

48. At all relevant times, Allied World knows or should know Plaintiff is served on April 10, 2013, either through direct knowledge or because Allied World is on inquiry notice.

49. At the time it confirms coverage, Allied World has in hand the Kaiser Cross-Complaint with proof of service dated April 9, 2013. Allied World knows the Cross-Complaint names Plaintiff as a cross-defendant on April 9, 2013 and so is on inquiry notice that Plaintiff was first served outside the 2013-2014 Renewal Policy period.

50. Allied World knows Plaintiff tenders its claim November 2013, within the 2013-2014 Renewal Policy period.

51. Allied World states in its January 7, 2014 coverage grant: "As the Complaint alleges a Claim for a Wrongful Act made against Insureds *during the Policy Period*, the conditions precedent to the Insuring Agreement appear to be satisfied." [Emphasis added.]

52. At no relevant time does Plaintiff know Allied World's coverage grant is based on Allied World's failure to conduct a fair and thorough investigation into the date of service.

53. Plaintiff incurs some $800,000 in attorney fees successfully defending itself against the Kaiser action. Plaintiff relies on Allied World's coverage grant in incurring these costs.

54. Had Allied World not waited eleven months before reversing its coverage grant, Plaintiff could have avoided incurring its significant

defense costs by, for example, considering buckling to Kaiser's pressure in order to exit the case.

55. At no time prior to reversing its coverage grant did Allied World reserve its right to withdraw coverage based upon Plaintiff's date of service as Allied World chose to grant coverage without enforcing any condition precedent requiring a claim submission relative to service of the cross-complaint.

56. Plaintiff has complied with all necessary terms of the Policy, to the extent Allied World has not waived those terms or is estopped from enforcing them.

57. Allied World continues to deny Plaintiff's claim for defense costs reasonably and necessarily incurred.

58. As a direct, proximate and legal result of Allied World's breach of contract as alleged herein, Plaintiff has been damaged in an amount according to proof, including contract losses, consequential losses and interest at the legal rate from the date of the breach.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

59. Plaintiff repeats and realleges paragraphs 1 through 27 and 29 through 57 of this Complaint, as if set forth and full herein and incorporate said allegations by reference.

60. As a result of the issuance of the subject Policy, the relationship of insured and insurer was created between Plaintiff and Allied World. This in turn gave rise to a duty on the part of Allied World to act in good faith and deal fairly with Plaintiff in the handling of the subject claim.

61. Among other things, the implied covenant of good faith and fair dealing requires Allied World to give the interests of its insured at least as must

consideration as it gives its own pecuniary interest. In addition, Allied World is obligated to promptly, fairly and thoroughly investigate and process the claim presented by Plaintiff, its insured.

62. Allied World is obligated not to place an unduly restrictive or arbitrary interpretation on the terms and provisions of the policy, and is further obligated not to unreasonably delay or withhold benefits due under the policy.

63. Allied World is obligated to search thoroughly for facts supportive of the insured claim or for facts that would support denying the insured claim, and to assist the insured in receiving all monies due under the policy. Finally, Allied World is required to follow the law of the State of California in its interpretation of coverage afforded by the policy.

64. Plaintiff fully cooperated with Allied World in the tender of the Kaiser lawsuit defense, yet Allied World failed and refused to defend the Kaiser lawsuit, despite Defendants' clear obligation to do so, and without any justification or excuse.

65. Specifically,

    a. On November 20, 2014, Allied World improperly and contrary to applicable law took the position that it was entitled to deny coverage for an admittedly covered loss, based on its inaccurate and unreasonable interpretation of coverages and exclusions in the policy for which it had received and retained premiums. Allied World denied coverage even though the attorney assigned to the claim recognized that there was a potential for coverage in her January 7, 2014 letter.

    b. Despite multiple requests by the Plaintiff and its counsel for reconsideration, Allied World refused to investigate, evaluate or

consider the true nature of the Plaintiff's claim, focusing only on facts it believed supported its position and either ignoring or unreasonably failing to seek out and fairly evaluate facts that supported the Plaintiff's claim. Allied World unreasonably made multiple misrepresentations to the Plaintiff about the scope of the policy coverage and the law governing such coverage, in the hope that the Plaintiff would give up on its claim.

c. Allied World refused to defend the Plaintiff even though it recognized a potential for coverage without seeking relief from its obligations under the policy from a Court. Without such relief, Allied World was not freed from its duty to defend at any relevant time.

66. In the handling of the Plaintiff's tender for the defense of the Kaiser lawsuit, Allied World has breached the implied covenant of good faith and fair dealing, by, among other things, failing to promptly conduct a thorough and complete investigation designed to discover all facts supporting or denying coverage and covered damages suffered by the insured; making fraudulent and untrue statements concerning the scope of insurance coverage on Plaintiff's claim; refusing to acknowledge, document or properly investigate additional information concerning Plaintiff's claim when brought to its attention and; giving false and misleading information to its insured in the hopes that the insured would give up and accept less than what he was entitled to under the policy.

67. Further, Allied World has breached the implied covenant of good faith and fair dealing by adopting an impermissibly restrictive interpretation of policy terms, so as to limit Allied World's clear and unequivocal obligation to pay for a defense and indemnity imposed by the contract of

insurance and under California law in such manner as to render the policy coverage paid for by Plaintiff illusory, thereby frustrating the reasonable expectation of the insured, all for the sake of enhancing Allied World's financial status.  Additionally, Allied World has breached the implied covenant of good faith and fair dealing by ignoring California law applicable to Plaintiff's claim, which law unquestionably required Allied World to pay benefits sufficient to defend the Plaintiff, once coverage was triggered by, among other things, Allied World's coverage grant.  In doing so, Allied World failed to follow proper claims handling procedures as required by Department of Insurance regulations and the law.

68. As a direct, proximate and legal result of Allied World's breach of the implied covenant of good faith and fair dealing as alleged herein, Plaintiff has and will incur attorney fees as special damages necessitated by having to bring this lawsuit to obtain benefits owed.  The Plaintiff has also suffered general damages according to proof.

69. As a further direct, proximate and legal result of Allied World's breach of the implied covenant of good faith and fair dealing as alleged herein, Plaintiff has been deprived the use of the policy benefits rightfully due to it as well as other special damages according to proof.

70. In breaching the implied covenant of good faith and fair dealing as alleged herein, Allied World acted with malice, fraud and/or oppression in violation of Civil Code section 3294.  Allied World knew that Plaintiff was entitled to the benefits claimed and consciously and callously disregarded its insured's rights by refusing to properly honor the claim, and continuously reevaluated and conducted sham investigations designed solely to give the impression that it was properly investigating

the claim, when in fact Allied World was seeking to "paper" its file in order to justify a denial, in the hopes that Plaintiff would give up and abandon its claim.

71. At all times herein alleged, Allied World knew or should have known that Plaintiff had a significant financial need of the funds promised by its insurance policy to effectuate a proper defense.  Defendant Allied World knew it was conducting a sham "adjustment" and in doing so it was motivated for its own financial interest at the expense of the insured's interest.  All of said conduct of Allied World as alleged herein was done with the advanced knowledge or subsequent ratification or authority of management level agents or employees of Allied World, who adopted certain practices designed to discourage claims and limit indemnity payments on a company-wide-basis, including those practices described in this Complaint.  Therefore, as a direct, proximate and legal result of the foregoing, Allied World is liable for punitive damages in an amount sufficient to punish Allied World and make an example of it and deter it from similar conduct in the future.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

As to all causes of action:

1. For contract benefits in a sum according to proof, plus interest at the legal rate according to proof;

2. For special damages for bad faith including attorney fees, and other out of pocket expenses resulting therefrom in an amount according to proof;

3. For consequential general and special damages according to proof;

4. For such other further relief as the Court may seem just and proper.

As to second cause of action only:

5. Punitive damages according to proof.

Dated: January 5, 2016          DANIELS LAW

*[signature]*

William A. Daniels
Attorneys for plaintiff,
Emergent Medical Associates

## JURY TRIAL DEMAND

The Plaintiff hereby demands a trial by jury.

Dated: January 5, 2016          DANIELS LAW

_____
William A. Daniels
Attorneys for plaintiff,
Emergent Medical Associates